Good morning, Your Honors. May it please the Court, Sarah Weinman on behalf of Mr. Chaker. When Mr. Chaker was sentenced for bankruptcy fraud in the Southern District of Texas, the sentencing judge, Judge Atlas, imposed a condition of supervised release restricting harassment and as a subset of harassment, defamation. As the government conceded below, Judge Atlas said specifically and repeatedly that the condition would not infringe on protected speech. For example, she said, quote, you have the right of first amendment The order doesn't say anything, right? The condition itself doesn't say anything about the First Amendment, right? That's correct. The condition, the written condition states that the defendant may not stalk and coerce harassers. Maybe, maybe, I'm not exactly sure what her oral statements do. If, I mean, probation conditions are all about giving up rights. Correct. You have a right to do all sorts of things that supervised release conditions cut off. I mean, there wouldn't be any, wouldn't be a condition if you weren't giving up rights. So why isn't the statement, if it has any meaning at all, saying, look, your First Amendment rights are not going to be violated because we're cutting them off? Well, we believe that the oral pronouncement is consistent with a written condition. What the condition was restricting, as Your Honor notes, it was restricting harassment, which means, as this Court has held Harassment and defamation. The condition reads, the defendant may not stalk and or harass, to include but not limited to posting personal information of others or defaming a person's character on the Internet. Now, when the sentencing judge imposed the condition, she stated, you have the right of First Amendment. I do not, she stated, I'm not telling you you're not allowed to have free speech rights. I'm not saying that. And I will cross this requirement very carefully to not step on your toes. In other words, she stated, consistent with the definition of harassment, as this Court has held, that free speech rights would not be infringed upon. Now, I would point to this Court's decision in Rodriguez v. Maricopa County Community College, which states that harassment law generally targets conduct. And it sweeps in speech as harassment only when consistent with the First Amendment. And that's exactly what Judge Atlas did here. What she sought to restrict was harassing conduct and that speech which falls into the narrow exceptions to the First Amendment. And she specifically discussed threats, incitement. But the written condition is broader, right? Because it talks about restricting from publishing personal information. To the extent that it constitutes harassment. It doesn't, it doesn't. Well, I believe that the construction of the condition must be read that way. The condition imposed orally was may not stalk and or harass. The condition imposed as written was may not stalk and or harass to include but not limited to posting personal information and defaming others on the Internet. In other words, to the extent that those things rose to the level of harassment or stalking, they would be restricted. Well, I mean, on the oral and what the judge said at the time orally, whether or not technically the which governs the oral statement certainly would have led the defendant to believe. That's correct. You're already had certain privileges. That's correct, Your Honor. So even if this court believes contrary to what we believe is a plain reading of the record, that the condition did infringe on some First Amendment rights. Then we believe it's unconstitutionally vague and overbroad for precisely the reason that you just stated. The judge did say, I will not step on your First Amendment rights in imposing the condition. So if the condition does that, then it failed to provide adequate notice and is at risk of and risks arbitrary enforcement. The condition is vague for a second reason, and that is. So I didn't quite catch that. Why is it vague? Judge Atlas told Mr. Chaker, I will not infringe on your First Amendment rights in imposing this condition. So if the condition can reasonably be read despite that oral pronouncement to infringe on First Amendment rights, it fails to provide adequate notice. I'm sorry. Why is that not provide adequate notice? If that's a condition, that's the condition, right? You may say that it wasn't violated in this case, that he didn't violate the condition. But what's vague about it? Because harassment law, again, generally targets conduct, and it sweeps in speech only to the extent that that speech is consistent with the First Amendment. And that's what Judge Atlas stated. Now, if the condition holds. But you can go through that analysis and either say it does comply with the First Amendment, doesn't comply with the First Amendment. What's vague about that? I'm just not understanding the vagueness point. The vagueness point is that if the condition can be interpreted to infringe on First Amendment rights, including core First Amendment rights, which is what we're talking about in terms of the statement that was deemed to have violated the condition here, a statement about a public official involving a matter of public concern. If the condition reasonably can be interpreted as restricting that core political speech, then the condition failed to provide adequate notice. Because, again, the plain wording of. You have to get into that for. If the judge said he doesn't, in effect, nothing that violates, nothing that would be protected by the First Amendment is covered, the only issue, as Judge Kuczynski said, is was it covered by the First Amendment? There's no. Right. And the government on appeal has conceded that this is protected speech. There's no question that a statement about a public official involving a matter of public concern is really the heart of the First Amendment. Was there any showing that this was defamatory? No, Your Honor. Now. I mean, putting the First Amendment aside, defamation is a well-defined concept? Correct. So that brings me to my third argument, which is that even if the condition unambiguously infringed upon protected speech, there was insufficient evidence to prove that the statement in question here constituted harassment or defamation. And for this reason as well, reversal is required. The – again, we believe that the statement as written, and the district court agreed  we – the evidence submitted doesn't meet any of the required elements of harassment. Now, the district court also went on to consider defamation. But I thought harassment was defined as including defamation. Your Honor. And saying that she was forced out, the officer was forced out of the police department is defamatory or false, right? The parties agreed and the district court stated that a defamatory statement would still have to meet the definition of harassment to constitute a violation of the condition. And it doesn't here because the statement was not directed to Faisal, the police officer in question. But the court also – the district judge, Judge Burns, also considered whether the statement constituted defamation, which, as Your Honor stated, has very clear, precise, well-established elements, notably that the statement be false, that the statement be one of fact rather than opinion, and that it – where the statement concerns a public official, that it be knowingly false or made with reckless disregard to the truth. So was – was Investigator Faisal a public official or was that even discussed? She – it was discussed and she is a public official. Did the government show actual malice? The government did not show actual malice. There is no evidence that the statement was knowingly false or made with reckless disregard for the truth. And if I could back up to the – to the threshold element of falsity, there is simply no evidence that the statement was even false. The best that the government can do on appeal is say that Chaker likely made up the claim that Faisal had been forced out because he had lied before. But there is no evidence of that in the record. The one piece of evidence submitted by the government here was an email from the police officer Faisal to Mr. Chaker's probation officer seeking to have him violated on the basis of a statement that she had been forced out of the police department. Is that a statement of fact or a statement of opinion? I mean, to say you were – they were fired or the employment was terminated is factual. To say forced out, I don't know if that's necessarily a fact. Correct. It is a statement of opinion. It's a – it's – it states that – Really? Yes. Asking the question. Yeah. I mean, you're agreeing with what you think Judge Wadler is saying, but I heard Judge Wadler just asking a question. The statement is one of opinion read in the – I mean, if you're told – if you're told, look, we're going to fire you if you don't leave, isn't that being forced out and isn't that a fact rather than an opinion? I think it could include a number of things, being forced out, being pressured to leave. What the form, context, and content of the statement here indicates that the statement was one of opinion. But again, if I could just back up. It's something that can be proven false, right? And it never was here. And it never was here. The one place that – If you let me finish what I have to say, then maybe you'll speak to what – since it can be proven false, why is it opinion? Opinion is something that can be proven false. But this can be proven false. I mean, let's say she shows she has a lot of resignation and she brings statements from her supervisor saying, no, we loved her, we hated to see her go. She resigned on her own. It would negate the idea that she was forced out. It can be proven – it's not a question of opinion, right? I agree, Your Honor. It does seem like there's some tension between something that can be proven false and whether something – Well, there's always a little fuzziness, but it doesn't seem fuzzy in this case. Well, if Your Honors believe that this is a statement of fact, falsity was never proven here. The one place that you would expect to find a claim that the statement was untrue would be in Faisal's email to the probation officer in which he provided an excerpt of this blog post, but never claimed that it was untrue, never disputed it, never assured that she had left on good terms. Could I ask you, could we remand if we accepted your argument and tell the judge he can't do it unless he holds a hearing and makes certain findings and give the government an opportunity to prove that it was essentially false and malicious? Maybe by calling the individual who was the subject of these remarks. Yes, remand – this court could remand. We would ask that the court remand on a closed record, however, given that there was a failure of proof after a full inquiry into the factual question at issue here. In fact, the government, even after Judge Burns discussed at length his focus on whether the statement was false, the government and district court stated, we don't think it matters. What would be the point of remanding for remanding on a closed record? Then we can make a decision ourselves, right? There's no point in remanding, having the district judge do it, and then we review it again. What would be the point of remanding on a closed record? The point would be for the district court to make findings that was tethered to the actual evidence presented, which we don't believe the district court did here. Well, why do they need findings? I mean, if we're going to say that – we can just as easily say the government didn't prove it was defamatory. Yes, you could. So that gets back to Judge Corman's question. Can we remand? I mean, I realize we could hold that, but isn't there a more prudent cause to remand than to say, look, district court applied the wrong standard, there was no proof of defamation, there was no proof of malice, do it over? Yes, we agree that that would be the correct remedy. Okay, thank you. We'll hear from the government. Good morning. May it please the Court, Helen Hong on behalf of the United States. I want to go into the context. Do you agree that in order for there to be a violation, the statement would have to be harassing? Harassment within the common definition used in the dictionary, Your Honor. I disagree with counsel that harassment by its terms excludes from its scope First Amendment-protected activity. Nothing in the plain language of harassment itself does that. Judge Watford made that point in Osinger, which is there is no First Amendment exception to harassment or offensive language. What about what he was told at sentencing? And the context there makes clear that given the defendant's efforts over his – the course of the period that the judge saw him to insulate his actions by claiming the protections of the First Amendment, that the district court was saying, look, legal niceties don't matter. Here is what I want you to do. Don't stalk and don't harass. The district court – But I'm not doing anything to deprive you of your First Amendment rights. The district court's comments there – In substance. I'm not quoting him. Right. In substance, what the district court said on ER-212 is we're not talking about legal. We're not talking about the First Amendment. We're talking about give people the benefit of the doubt. That means I'm not talking about what is protected or not protected. Be nice. Excuse me? Be nice. Be nice. So the kindergarten rule? But it's be nice in the context of supervised release conditions here. Certainly this court – But the court did say what Judge Corman suggested to you, that the court said, look, this is not infringing on you. This is not limiting your First Amendment rights. And I disagree. I don't think that's what the district court meant. What the district court said, ER – So what she said and what she meant are two different things. We would go with. Correct. So if you look at ER – So why don't you answer my question first, and then we can go to the next question. Okay. The question is, she did say this. She did say that – Okay. So you agree with that. She did say I'm not going to limit your First Amendment rights. She said we're not talking about the First Amendment. I don't want to step on your toes. That is correct, Your Honor. But the context of those statements – Okay. The context of those statements, I think, matters. Because in ER-210 is where she begins to speak about the special conditions that she wanted to impose. And she said that the most important thing that she had heard were the hearings on Mr. Shachar's brawn revocation, and I have received extensive information about the conduct by Mr. Shachar that is invasive. In light of that invasive conduct, she said she was going to be imposing the supervised release condition. Now, what she said about Mr. Shachar's conduct that led to and that bred the condition was, I don't know if it is illegal. Since he's not been charged with it, I'm not saying it's criminal. But in effect, the supervised release condition was to prevent the defendant from engaging in this pattern of escalating conduct that ultimately could lead to criminal harassing behavior. But she said that because the conditions that she was imposing had nothing really to do with the crime that he was convicted of. No, I think she tethered what she was imposing to his behavior that has been evidenced. Yes, but it had nothing really to do with the bankruptcy fraud. Yes, it had nothing to do with the bankruptcy fraud. It had to do with his nature and characteristics. So why is this a valid condition anyway? Because this Court has held on numerous occasions that conditions that bear a reasonable relationship to the risk that the defendant will revert or return to criminal behavior is a key. Posting others' personal information on the Internet I would agree is harassing, but what does it have to do with bankruptcy fraud? And this Court has made clear, though, that a supervised release condition doesn't have to relate solely to the count of conviction. For example, in Soltero, the defendant was convicted of a gun charge. He was prohibited from associating with other felons. In United States v. Ross, the defendant was convicted of a 924 gun registration offense, and he was prohibited from associating with any other neo-Nazis. The question is whether under 3583 the condition reasonably relates to a goal of supervised release. And here the goal was rehabilitation. I think under that rationale you could attach to every criminal defendant's special conditions a condition saying, and be nice to others. But I think in this instance, and that goes to the second requirement of supervised release conditions, which is that it imposed no greater deprivation of liberty than reasonably necessary to achieve the goals of supervised release. In a case where the defendant doesn't have a 20-year history of harassing every person with whom he has a beef, I certainly agree that a be nice to others condition would not be appropriate. But in a case like this, where the record had extensive evidence of escalating conduct by Mr. Shachar, and that's... But that had nothing to do with his crime. Excuse me? Conduct that's not proven to be illegal and had nothing to do with the crime of which he was actually convicted. Yes, this had nothing to do with the conduct for which he was convicted. It did have to do with his conduct while he was out on bond while the proceedings were ongoing. And the bond revocation hearing, the five-hour hearing that the district court held, showed that the defendant had harassed, for example, another attorney in Arizona over the course of three years. Much of that conduct rose to what would certainly be criminal conduct. If you look at what 20... Well, you can certainly have a condition saying you won't engage in any criminal conduct. Yes, Your Honor. But where does a district court get authority to police this other seemingly undesirable conduct? Right. And I think it's... You're really insistent on not letting me finish the question. I apologize, Your Honor. You don't want to hear what I have to ask. No, I do, Your Honor. You sure? I certainly do. It didn't seem like it did. No, I do. I do. I apologize if I did. I'm sincere and genuine. I would love to answer your question. I don't believe you. I think you're kidding. I don't know how to... I'll take a polygraph. I'm sorry? I'll take a polygraph. What I would like you to do is I would like you to go back to your office and watch this Okay? It's probably good to do it with some of your colleagues in your office just so you're properly embarrassed about it. Okay? I think it would be an important lesson for your future cases. Understood, Your Honor. The question I had, if you'll let me finish it, is this is conduct that may be undesirable. I think many of us, perhaps all of us, most of us, would think this is the kind of conduct a nice person should not engage in. And we're probably, many of us, perhaps most of us, perhaps all of us, unhappy that there are people out there on the Internet doing all sorts of things like this, invading people's privacy, disclosing information that should be kept private, you know, doing things that are not nice. But the question is, we're honoring illegality. Where does a district court get the authority in imposing conditions that make somebody behave nice? I understand if it's conduct related to the crime for which the person has been convicted. But you've already conceded this has nothing to do with that kind. Where does a district court get authority to impose that kind of condition? Your Honor, I think United States v. Ross and United States v. Napolo make clear that the court can impose conditions. I'm sorry, what do those cases hold? That in United States... Are you familiar with United States v. Bayer? Bayer, Your Honor? Yeah, I dissented in that case, but... I'm not sure at this moment, Your Honor. I'm not trying to spring a case on you. I just remembered it because it happened in the last year. This was a case where the defendant was kept from accessing the Internet, and his original crime had not used the Internet. And the majority of my dissent said, well, that kind of crime can be committed using the Internet. He was involved in crimes that many people use their computers for. So they upheld the condition. But that seemed to me to stretch the limits. I mean, I thought it went beyond the limits myself, but... You know, and so I looked at that area pretty closely when I was working on Bayer, and it seemed to me that that case really came to the limits. Somehow you have to find a nexus to the crime in question, the crime of which the defendant has been convicted. Now, are the cases which you cite, does Ross involve a condition that had no relation to the crime in question? An association with neo-Nazis was the prohibition, and the crime for which Mr. Ross was convicted was a gun offense. Could there be a nexus there? Because the court found that he would engage in criminal conduct if he continued to associate with other criminals. I don't think there was... There we go. I mean, that's a nexus. It may not be a persuasive nexus, but you managed to bamboozle the U. The United States managed to fool the district judge and impose that condition, but at least the court articulated some connection to the crime. He is involved in a crime involving possible violence. If he keeps hanging out with people that I'm characterizing, that engage in violence, he's going to be more tempted to recidivate, if that's a term. So what about the other case you cited? Does that case involve a situation where there's no nexus to the crime in question? Well, there's a recent case that came out from the Ninth Circuit, United States v. Lacoste. That had to do with an Internet prohibition condition on supervised release. And what was the crime? The crime was mortgage fraud or mail fraud. That sounds a lot like Bayer, doesn't it? That sounds a lot like Bayer in that... The majority actually reversed and found that the condition was improper because the reason that the condition had been imposed was one allegation that some victims raised, which was that the defendant would post not nice things about them on the Internet. The court left open in Lacoste for the district court an opportunity to impose a condition that would address that harm and remanded to the district court to determine whether a condition would be appropriate. But that is something involving the victims, right? So this is a situation where the victims claim he's going to do stuff to retaliate against us. That's a nexus to the crime. That's a nexus that the district court could reasonably think, it seems to me, that having a criminal defendant take after victims after he is punished is going to make future victims less likely to complain. This is some continuation of the conduct. But this has nothing to do with it. This conduct has nothing to do with bankruptcy fraud. There's no claim that any of the people being harassed were creditors in the bankruptcy case, right? Nothing like that. That's correct, Your Honor. But 3583 doesn't require a condition that has a nexus solely to the crime of conviction. It has to be reasonably related to the goals of deterrence, the goal of rehabilitation, and to the goals of protection of the public. So that's the deterrence of what? The deterrence of not being nice? Well, and here it's not just me. I see I'm out of time. Oh, no, you're not. You're going to have to keep talking. Certainly. And I don't – no, I don't think in this case it's simply just a not – a be nice condition. I think Mr. Shaker's attorney has a – Well, just so you understand, Ms. Sherman, when I say be nice, as opposed to – you know, it's perfectly fine for the district court to say, look, you'll obey all laws. So if you do anything that's criminal, including criminal on the Internet, including, you know – but this is not at all limited to criminal conduct. This is conduct that's not illegal. Agreed that the condition reaches conduct that is not illegal. The question is, though, in this case, where the defendant had escalated conduct from non-legal to clearly illegal harassment activity. So the district court had heard from Ms. Speth, for example, and it's clear that what Mr. Shaker – and I think Mr. Shaker's attorney agrees in the reply brief that that conduct rose to the level of criminal harassment conduct. Could the district court say, I've heard that you and your wife – I don't know if this defendant is married, but in a hypothetical case – are having marital difficulties, and therefore I impose a condition that you be nice to your wife and no arguments, no beating, you know, domestic violence. That's the term I was looking for. Could the federal court impose that kind of condition? Certainly, if there was a – if there was a nexus between the defendant's behavior toward his wife and criminal conduct – so, for example, he ultimately beat her – then, yes, I think the court could impose conditions that were designed to prevent the escalation that led to the beating. And that's precisely what the district court did here. Before the defendant committed the crime, she wanted to ensure that there were The discussion of escalation is replete in the record. Ms. Feth talked about how Mr. Shaker's conduct escalated. Ms. Faisal talked about how Mr. Shaker's conduct escalated. So the question, I think, then is about whether it involves a greater deprivation than necessary to achieve the goals. Thank you. Thank you, Your Honor. Did you have time left? I did. Do you want to take a minute? You don't have to. Sometimes when people are ahead, they just sit down. That's fine. Thank you. Good move. The case is argued. We'll stand for minutes.
judges: Kozinski, Wardlaw, Korman